IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CONNIE M. STONEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 08-0852-CV-W-SOW |
| | ) |
| BANC OF AMERICA INVESTMENT SERVICES, INC. and RICK L. CRANDELL, | ) ) ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants Banc of America Investment Services, Inc. ("BAISI") and Rick L. Crandell ("Crandell") (together, "Defendants") submit these Reply Suggestions in Support of their Motion for Summary Judgment on all claims asserted by Plaintiff Connie Stoneman ("Plaintiff" or "Stoneman").

### INTRODUCTION

Plaintiff's Opposition to Defendants' Motion for Summary Judgment does not in any way tackle the undisputed dispositive facts which entitle Defendants to summary judgment in their favor. For example, it does not tackle the obvious fact that her alleged claims are barred by the statutes of limitations. Nor does it tackle the obvious fact that the entire amount of out-of-pocket loss she suffered totals to only $20,000. Instead, Plaintiff merely perpetuates the fantasy that she somehow is entitled to recover the entire amount she invested in the market almost ten years ago, plus a huge profit based upon unrealistic projections which ignore the volatility of the market during that period. She also perpetuates the fantasy that despite her obvious concerns (which

commenced the running of the statutes of limitations), she was free to sit back and see how her investment turned out before asserting any claims.

Plaintiff's claims are not based on any egregious conduct by Defendants; rather they are premised on the benefit of hindsight and Plaintiff's convenient post hoc ignorance regarding the workings of her investment. Like hundreds of thousands of other investors over the past ten years, Stoneman purchased a common investment product on the eve of a lengthy and severe market decline in early 2000. Defendants provided Plaintiff with all the required disclosures about the product, though they could not, and did not, predict the product's performance. At all times, Defendants acted in good faith and with no intent to harm Plaintiff. Despite this, Plaintiff still seeks to present a case to a jury based on an investment through which she lost $20,000. She fared better than the majority of investors everywhere.

In addition, Stoneman seeks to present claims to a jury that were not even timely filed. The conduct complained of by Stoneman took place in late 1999 and early 2000. Yet she sought redress for this conduct eight years later. In the interim, Stoneman closely monitored her investment and became so concerned at one point that she threatened to liquidate the Nations Variable Annuity from Hartford Life ("Annuity") she purchased to invest in a bond fund. The record conclusively shows that Stoneman's claims are hopelessly barred by the applicable five-year statutes of limitations, which began to run in March 2003 at the latest. Plaintiff has failed to present any disputed, material facts that must be resolved by a jury.

## DEFENDANTS' UNCONTROVERTED FACTS

Plaintiff admits that the following facts are not controverted: Defendants' Statements of Fact ("SOF"): 1-10, 14-15, 18, 23, 25, 27-30, 32, 34, 36-37, 39, 41-45, 51, 53, 59-60.

Plaintiff's attempt to dispute the remaining facts contained in Defendants' SOF is unsuccessful because Plaintiff provides extraneous, nonresponsive information, asserts an

argument and/or essentially ignores the record evidence Defendants have cited to establish their uncontroverted facts.

The following supposedly "disputed" facts of Defendants are uncontroverted for the reasons set forth below:

Defendants' SOF 11. The only evidence Plaintiff has to contradict this fact is her self-serving affidavit which, absent any supporting documentation, does not defeat Defendants' properly supported motion for summary judgment. *See Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831 (8th Cir. 2008) (quoting *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006)). Crandell testified that he had no reason to believe that he did not make his standard presentation to Stoneman. Plaintiff's allegation in her Petition that Crandell told her "the market historically averaged 10%" is consistent with Crandell's standard presentation. (Defendants' SOF 11; Ex. 6 to Plaintiff's Suggestions in Opposition to Defendants' Motion for Summary Judgment ("Opposition"), Crandell Depo., 181:21-182:11; Petition at ¶ 66.) This fact has not been controverted.

Defendants' SOF 12. SOF 12 is derived directly from Plaintiff's own testimony. Nevertheless, Plaintiff asserts that this fact is disputed. Plaintiff attempts to support her position by quoting her unsupported, self-serving affidavit. *See Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) ("a plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor"). Plaintiff has failed to controvert this fact.

Defendants' SOF 13. Plaintiff admits this fact with the qualification that her decision to purchase the annuity was based only on Crandell's recommendation and representations that the variable annuity would pay her $2,000 per month and leave her principal intact. Again, Plaintiff

seeks to support her position through her unsupported, self-serving affidavit. Crandell testified that he "unequivocally did not say that [Stoneman's] principal would not decline." (Ex. 6 to Opposition, Crandell Depo., 115:6-13.)

<u>Defendants' SOF 16.</u> SOF 16 is derived directly from Plaintiff's own testimony. Moreover, despite initial allocations in stock mutual funds, Plaintiff later decided to invest the proceeds of her subaccounts into bond mutual funds. (Defendants' SOF 24.) Plaintiff fails to controvert Defendants' factual contention.

<u>Defendants' SOF 17.</u> SOF 17 is derived directly from Plaintiff's own testimony. Plaintiff had the opportunity to review the exhibit handed to her, and explained the document authorizing withdrawals from the Annuity, as well as IRS Code § 72(t), during her deposition. (Ex. 4 to Opposition, Stoneman Depo., 70:24-71:1; 71:2-18.) Regardless of information provided by Crandell, Stoneman made the decision to withdraw $2,000 monthly from the Annuity. Plaintiff's proffered argument and information are non-responsive and immaterial, and fail to controvert Defendants' factual contention.

<u>Defendants' SOF 19.</u> SOF 19 is derived directly from Crandell's testimony and recollection of his meetings with Plaintiff. Plaintiff's deposition testimony and Petition confirms Crandell's recollection of events. Plaintiff alleged "in late 1999, Stoneman became concerned that she could not properly care for her grandchildren/wards and continue to work." She also alleged, "she needed income to help support her grandchildren …." (Petition, ¶¶ 24, 54.) In her deposition, Plaintiff admitted that her grandchildren increased her household expenses. (Ex. 4 to Opposition, Stoneman Depo., 123:4-11.) Plaintiff has failed to controvert this factual contention.

<u>Defendants' SOF 20.</u> Although Plaintiff claims this fact is disputed, her proffered argument and information are non-responsive and immaterial, and fail to controvert Defendants'

4

factual contention. Crandell, a BAISI financial advisor, testified that he, and other BAISI financial advisors, did not receive rewards for the sale of the Annuity. (Ex. 6 to Opposition, Crandell Depo., 41:8-13.) Plaintiff's citation to her "expert's" affidavit does not controvert Crandell's testimony regarding his experience with BAISI.[1]

Defendants' SOF 21. Plaintiff's self-serving affidavit, absent any supporting documentation, does not defeat Defendants' properly supported motion for summary judgment. *See Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831 (8th Cir. 2008) (quoting *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006)). Crandell testified that he had no reason to believe that he did not make his standard presentation to Stoneman. Plaintiff's allegation in her Petition that Crandell told her "the market historically averaged 10%" is consistent with Crandell's standard presentation. (Defendants' SOF 11; Ex. 6 to Opposition, Crandell Depo., 181:21-182:11; Petition at ¶ 66.)

Defendants' SOF 22. Plaintiff attempts to qualify her admission to this fact with contradictory deposition testimony. Stoneman testified that Crandell did not provide her with requested information regarding the prospectuses, but then later testified that Crandell never failed to return her calls. (Ex. 4 to Opposition, Stoneman Depo., 128:21-24.) Crandell testified that he could not imagine telling Stoneman there was "nothing" in the prospectuses that she needed to be concerned with. (Ex. 6 to Opposition, Crandell Depo., 171:15-172:18.)

Defendants' SOF 24. The initial allocations in the subaccounts are immaterial to this Statement of Fact, as Stoneman admitted in her deposition that she later transferred the proceeds of the Annuity in and out of bond mutual funds. (Ex. 6 to Opposition, Crandell Depo., 154:21-

---

[1] Plaintiff's "expert" provides affidavit testimony regarding commissions paid to BAISI from Hartford Life for the sale of annuities, but the source of his knowledge on this subject is not stated in his affidavit and, as such, is not admissible evidence for summary judgment purposes. Fed. R. Civ. P. 56(e).

5

156:2; 157:17-158:9;161:19-24; Ex. 10 to Motion for Summary Judgment; Ex. 11 to Motion for Summary Judgment; Ex. 4 to Opposition, Stoneman Depo., 98:14-100:16.) Plaintiff also objects to the question as vague and ambiguous. The testimony, however, to support this fact was elicited by Plaintiff's attorney. Presumably, Plaintiff does not seek to object to her own attorney's questioning as vague and ambiguous. In any event, Plaintiff has failed to controvert this fact.

Defendants' SOF 26. Plaintiff claims this fact is disputed because Mr. Stoneman testified that the number of times Plaintiff and Crandell spoke "might average every month." In fact, Mr. Stoneman testified as follows:

Q: Did your wife and Mr. Crandell speak often?

A: I would say often, not in the sense of like daily.

Q: Right.

A: Maybe more month or two.

Q: Is he someone she spoke to regularly?

A: No. I wouldn't say regularly, no.

Q: But you would say it would be every month.

A: Average.

(Ex. 2 to Opposition, C. Stoneman Depo., 20:24-21:7.) The testimony cited by Plaintiff is insufficient to create a controverted issue of fact.

Defendants' SOF 31. Plaintiff claims this fact is disputed because she did not testify that she "followed the market," just that she watched CNBC once or twice a week. Plaintiff testified that she tuned into CNBC "to see what was going on." Plaintiff also testified that she followed

6

the bond market on CNBC. (Ex. 4 to Opposition, Stoneman Depo., 102:3-7; 112:15-113:11.) The testimony cited by Plaintiff is insufficient to create a controverted issue of fact.

Defendants' SOF 33. Though attempting to dispute SOF 33, Plaintiff relies on the same testimony as Defendants. Plaintiff testified:

Q: In April 2003, didn't you speak to representatives from Waddell & Reed?

A: Yes.

Q: Who did you speak to?

A: His name was Phillip Hayes.

Q: How did you meet him?

A: He was the advisor for a person that I knew.

…

Q: And how is it that Diane came to recommend that you talk to Mr. Hayes?

A: Approached her because I thought may I should get some other opinions about where I should be because of the losses.

(Ex. 4 to Opposition, Stoneman Depo., 92:19-93:9.) This testimony does not controvert Defendants' fact. Plaintiff spoke to a representative of Waddell & Reed to obtain another opinion on her investment because she was concerned about the losses in the Annuity.

Defendants' SOF 35. Plaintiff's testimony does not dispute Crandell's recollection of his conversation with Plaintiff in 2003 after she told him she was going to transfer her funds. Crandell asked to speak to Plaintiff about her decision to transfer and Plaintiff consented to the meeting. Plaintiff's impression of Crandell's demeanor when he asked to speak to her in March 2003 is immaterial. Plaintiff has failed to controvert Defendants' factual contention.

Defendants' SOF 38. Plaintiff's proffered information is immaterial and non-responsive. Crandell testified that he did not consider trail commissions earned from Plaintiff's account to be of benefit to him. There is nothing in the record that disputes Crandell's view of what he considered beneficial to him. Plaintiff has failed to controvert this fact.

Defendants' SOF 40. Plaintiff offers immaterial and non-responsive testimony to attempt to controvert this fact. Stoneman made the decision to invest in bond mutual funds and then gradually re-enter the market. Crandell testified that at times Stoneman would suggest transferring her investment from bond mutual funds to stock mutual funds and that his general practice was to do what the client was comfortable with. (Ex. 6 to Opposition, Crandell Depo., 157:17-158:9.) Plaintiff has not controverted this fact.

Defendants' SOF 46. Plaintiff offers immaterial testimony in an attempt to dispute this fact. Crandell's perception was that Stoneman was "content" with her investment at their April 2005 meeting. In her deposition Stoneman admitted that she could not dispute Crandell's view of the meeting and that she decided not to make any changes to her account. (Ex. 4 to Opposition, Stoneman Depo., 115:15-116:5.) Plaintiff has failed to controvert this fact.

Defendants' SOF 47. Plaintiff attempts to dispute this fact based on testimony that she told her friend to speak to other advisors. That does not change the fact that Stoneman recommended that her friend meet with Crandell and told Crandell the best way to meet with her friend. (Ex. 4 to Opposition, Stoneman Depo., 117:24-118:13.) This fact remains uncontroverted.

Defendants' SOF 48. Plaintiff claims that this fact is disputed based on her self-serving, unsupported affidavit. In her Petition, Plaintiff alleged "in late 1999, Stoneman became concerned that she could not properly care for her grandchildren/wards and continue to work."

She also alleged, "she needed income to help support her grandchildren …." (Petition, ¶¶ 24, 54.) In her deposition, Plaintiff admitted that her grandchildren increased her household expenses. (Ex. 4 to Opposition, Stoneman Depo., 123:4-11.) It is undisputed that Stoneman could have reduced the amount of her distributions when she turned 59½. It is undisputed that at the time she turned 59½, Stoneman had a part-time job through which she received income and that she was no longer responsible for her grandchildren or their attendant expenses. It is undisputed that Plaintiff opted to continue to withdraw $2,000 a month from the Annuity. Plaintiff has failed to controvert this factual contention.

Defendants' SOF 49. Plaintiff attempts to dispute this fact by citing the exact same testimony cited by Defendants. Moreover, her claim that her $2,000/month distribution from the Annuity was not necessary to take care of her grandchildren is immaterial to the fact that she took the distribution to support the household because she quit her job to take care of her grandchildren. Stoneman admitted in her deposition that her grandchildren raised her household expenses. (Ex. 4 to Opposition, Stoneman Depo., 122:24-123:6.) In her Petition, Plaintiff alleged "she needed income to help support her grandchildren …." (Petition, ¶¶ 24, 54.) Plaintiff has failed to controvert this fact.

Defendants' SOF 50. Plaintiff claims this fact is disputed because her apprehension level regarding the stock market "had not subsided." That immaterial testimony does not change the fact that Stoneman was less apprehensive about the stock market in 2007 than she had been two or three years before, as she admitted in her deposition. (Ex. 4 to Opposition, Stoneman Depo., 106:14-19.) Plaintiff has not controverted this fact.

Defendants' SOF 52. Plaintiff claims that the fact that she stopped working in January or February of 2008 is disputed because she was let go from her position. That immaterial

testimony does not change the fact that Stoneman stopped working in January or February of 2008.

Defendants' SOF 54.  Plaintiff's denial of her net out-of-pocket loss on the Annuity consists of a restatement of the legal theory upon which her damages claim is based.  As such, Plaintiff has not disputed this fact because she offered no competent evidence to controvert any of the facts stated.

Defendants' SOF 55.  Plaintiff claims this fact is disputed because between her and her husband, she made the decision regarding the investment of her retirement proceeds.  This does not change the fact that she made her own investment decisions regarding the Annuity.  Moreover, Plaintiff's own affidavit testimony indicates that when she expressed concern about the market, Crandell would suggest she transfer into bond mutual funds to alleviate her concerns.  Plaintiff made the decision to accept or reject his recommendation.  Crandell tailored his recommendations to address her concerns.  (Ex. 2 to Opposition, Stoneman Affidavit at ¶ 46.)  Stoneman's decision to talk to other investment advisors in 2003 demonstrates her ability to make independent decisions regarding the Annuity.

Defendants' SOF 56.  Plaintiff claims this fact is disputed because she did not make investment decisions; rather, she followed Crandell's recommendations.  Moreover, Plaintiff's own affidavit testimony indicates that when she expressed concern about the market, Crandell would suggest she transfer into bond mutual funds to alleviate her concerns.  Crandell tailored his recommendations to address her concerns.  Plaintiff made the decision to accept or reject his recommendation.  (Ex. 2 to Opposition, Stoneman Affidavit at ¶ 46.)  Stoneman's decision to talk to other investment advisors in 2003 demonstrates her ability to make independent decisions regarding the Annuity.

Defendants' SOF 57. Plaintiff claims this fact is disputed because she did not make investment decisions; rather, she followed Crandell's recommendations. Plaintiff's own affidavit indicates that when she expressed concern about the market, Crandell would suggest she transfer into bond mutual funds. Crandell tailored his recommendations to address her concerns. Plaintiff made the decision to accept or reject his recommendation. (Ex. 2 to Opposition, Stoneman Affidavit at ¶ 46.) The immaterial citation to Plaintiff's self-serving, unsupported affidavit testimony does not change the fact that Plaintiff made the decision to follow Crandell's recommendations. Stoneman's decision to talk to other investment advisors in 2003 demonstrates her ability to make independent decisions regarding the Annuity. Plaintiff's discussion of the fees for the Annuity and possible investment in bond subaccounts merely constitutes a restatement of the legal theory upon which her damages claim is based. As such, Plaintiff failed to dispute this fact because she offered no competent evidence to controvert any of the facts stated.

Defendants' SOF 58. Plaintiff claims this fact is disputed because Crandell was responsible for her account. Again, this does not change the fact that external factors over which Crandell had no control impacted Stoneman's investment. Plaintiff has failed to controvert this fact.

## LEGAL ARGUMENT

**A.     Plaintiff's Fraud Claim is Barred by the Applicable Statute of Limitations.**

Plaintiff claims that because Defendants were fiduciaries to Plaintiff, the fraud statute of limitations did not start running until she "actually discovered the fraud."[2] The Eighth Circuit

---

[2] Defendants do not concede that they owed a fiduciary duty to Plaintiff, except for purposes of this summary judgment argument, as Plaintiff had the capacity to exercise the final right to say "yes" or "no," and controlled her account. *See Follansbee v. Davis, Skaggs & Co., Inc.*, 681 F.2d 673 (9th Cir. 1982); *see also DeKwiatkowski v.*

has held that a fraud cause of action does not accrue for a fiduciary until the fiduciary has "obtained actual notice of the facts constituting the alleged fraud." *See Rademeyer v. Farris*, 284 F.3d 833, 837 (8th Cir. 2002) (citing *Cmty. Title Co. v. U.S. Title Guar. Co.*, 965 S.W.2d 245, 252 (Mo. Ct. App. 1998)). Plaintiff's fraud claim is premised on Crandell's purported misrepresentation that the market averaged a historical annual return of over 10% and that she could consistently withdraw $2,018 per month from her account and that such withdrawals could be funded by market appreciation.[3] (Plaintiff's Petition, ¶ 78.) Stoneman also alleges that Defendants misrepresented that any short term losses would be made up by future market gains and that she could withdraw $2,018 from her account and still reach an account balance of over $800,000 within five years. (*See id.*) Plaintiff had actual notice of the facts constituting her fraud claim in December 2002. At that time, she had experienced a loss of $122,281.68 in her Annuity and believed that that loss jeopardized the principal of her retirement account. (Defendants' SOF 28.) By December 2002, she knew that her withdrawals were not being funded by market appreciation and that the market had not averaged an annual return of over 10%. (Defendants' SOF 11.) Stoneman's contention that "severe" losses in her account did not put her on notice that she had been defrauded because of her lack of investment experience is entirely without merit. (Opposition at 29.) Stoneman's fraud claim is based on supposed

---

*Bear, Stearns & Co., Inc.*, 2002 WL 31086924, at *7-*8 (2d Cir. 2002) (emphasis added) (citing *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 536 (2d Cir. 1999)).

[3] Plaintiff's claim that "it is the purchase of the variable annuity, in and of itself, that is the fraud" is patently ridiculous. (Opposition at 30.) Plaintiff proceeds to list fifteen supposed misrepresentations and omissions by Defendants, none of which meets the criteria for an actionable fraud claim. "Mere statements of opinion, expectations, and predictions for the future are insufficient to authorize a recovery for fraudulent misrepresentation." *Arnott v. Kruse*, 730 S.W.2d 597, 600 (Mo. Ct. App. 1987). Moreover, Plaintiff even charges Defendants for failing to tell her facts that could not have possibly known when she made the decision to purchase the Annuity. For example, Defendants could not have possibly disclosed to Plaintiff in 2000 "that the commission they were receiving on her purchase of the variable annuity was $22,950 where the approximate commission on the government bond or bond fund would be $7,650." (Opposition at 31.)

representations by Crandell that she could withdraw $2,000/month from her retirement investment and preserve her principal. **According to her own testimony, she believed her principal was in jeopardy as of December 2002.** (Defendants' SOF 28.)

The rationale for tolling the fraud statute of limitations for fiduciaries is that "a fiduciary relationship creates a false sense of security." *Cmty. Title Co.*, 965 S.W.2d at 252 (citation omitted). Stoneman managed to overcome any "sense of security" she may have felt in her relationship with Crandell in March 2003 when she met with a financial advisor from Waddell & Reed and sought information regarding alternative investments. (Defendants' SOF 33.) She admitted in her deposition that she decided to remain with Crandell after that, but "was very apprehensive still at that point." (Ex. 4 to Opposition, Stoneman Depo., 123:4-11.) In March 2003, Stoneman had sufficient facts about the Annuity and sufficient doubts about her relationship with Crandell to seek advice from another financial advisor. Therefore, Stoneman had actual notice of the facts constituting the alleged fraud as of December 2002, or March 2003 at the latest. Her fraud claim was untimely filed in August 2008.[4]

### B. Plaintiff's Breach of Fiduciary Duty and Negligence Claims are Barred by the Applicable Statute of Limitations.

Plaintiff claims that her breach of fiduciary duty and negligence claims are timely because "the first time she understood how she had been defrauded and the amount of her actual loss was in 2008 when she discussed her account with the lawyer/securities expert." (Opposition at 36.) The applicable five-year statute of limitations for these claims, however, starts to run

---

[4] Nothing in the case law cited by Plaintiff suggests that the statute of limitations on Stoneman's fraud claim was tolled until she understood the exact legal basis for her alleged fraud claim and damages. Stoneman's suggestion that she could not have evaluated whether the variable annuity was an investment she wanted until she talked to a "sophisticated securities expert" in 2008 makes no sense (Opposition at 33). Stoneman spoke to another financial advisor at Waddell & Reed in March 2003. That advisor actually presented her with the option of investing in a bond fund that guaranteed an 8% return, an option that she declined. (Defendants' SOF 33-39.) In March 2003, Stoneman made a decision about whether the Annuity was an investment she wanted.

"when the damage resulting therefrom is capable of ascertainment." R.S.Mo. §§ 56.100; 516.120(4). "Capable of ascertainment refers to the fact of damages, rather than to the exact amount of damages." *Allen v. Kuehnle*, 92 S.W.3d 135, 139 (Mo. Ct. App. 2003). As of December 2002, Stoneman believed she "had lost a considerable amount of money" in the Annuity. (Defendants' SOF 27-30.) Plaintiff ascertained damages from her Annuity purchase well over five years prior to the filing of the Petition in October 2008. (Defendants' SOF 27.)

Plaintiff cites to *Vogel v. A.G. Edwards & Sons, Inc.*, 801 S.W.2d 746, 756 (Mo. Ct. App. 1990), to argue that account summaries, trade confirmations, and daily visits to a financial advisor's office were insufficient to inform a reasonable person that there had been a breach of fiduciary duty. The *Vogel* case, which addressed a claim of churning, is not applicable to this case because the Court of Appeals held that "the accrual of a claim based on churning is analogous to the accrual of a cause of action based upon fraud." *Id.* at 754. Additionally, while churning may be a difficult concept to grasp, understanding losses in an annuity is not. Stoneman understood the losses she incurred in 2002 and 2003, and called Crandell throughout their relationship when she became concerned about market drops and their impact on her Annuity.[5] (Defendants' SOF 32, 39, 44, 46; Ex. 2 to Opposition, Stoneman Affidavit at ¶ 46.) There is no question Stoneman understood the status of her retirement investment.

Plaintiff failed to address that any purported damage caused by BAISI's supposed lack of supervision, negligence, or breach of fiduciary duty was ascertainable and substantially complete

---

[5] Plaintiff's repeated assertions that the Annuity purchased by Stoneman is a "complex, high-risk investment" are unsupported by the record, as are Plaintiff's claims that the subaccounts in which she invested were "aggressive, high-risk stock accounts." (Opposition at 31-32.) Crandell testified that he did not deal with speculative or aggressive investments and would have turned away a customer that sought those types of investments. (Ex. 6 to Opposition, Crandell Depo., 67:11-68:10.)

as of December 2002. Plaintiff's negligence and breach of fiduciary duty claims against BAISI were filed almost one year after the statute of limitations on those claims expired.

Defendants are entitled to summary judgment on Plaintiff's breach of fiduciary duty and negligence claims as the claims are untimely. No material issue of fact remains as to the timeliness of those claims.

### C. Defendants Are Entitled to Summary Judgment on Plaintiff's Fraud Claim.

Plaintiff concedes that representations relating to the possible future performance of the stock market are not actionable for purposes of her fraud claim. (Opposition at 40.) As to any other misrepresentations or omissions alleged by Plaintiff in support of her fraud claim, she has not shown that Defendants acted with the requisite intent to sustain the claim. Plaintiff claims that intent to defraud can be inferred in this case because of the amount of commission received and because Stoneman received no benefit from the Annuity. (Opposition at 39.) Fraud, however, is not inferred or presumed by Missouri Courts. The law allows an inference of such deception "only if the evidence rises above mere suspicion and points logically and convincingly" to its presence. *Id.* (quoting *Weaver v. Travers*, 631 S.W.2d 81, 83 (Mo. Ct. App. 1982)). "Thus, where a transaction comports as well with honesty as with fraudulent purpose, the law refers it to the better motive." *Id.* (quoting *Powers v. Shore*, 248 S.W.2d 1, 5 (Mo. 1952)).

Crandell testified that Stoneman's guardianship of her grandchildren factored into the recommendation of the Annuity. (Ex. 6 to Opposition, Crandell Depo., 111:9-112:3.) Furthermore, as identified in Defendants' Expert Report, Stoneman was concerned that her husband would not have enough money to take care of her grandchildren if she passed away during the early years after her retirement. (Ex. 10 to Opposition at 5.) The death benefit of the

Annuity addressed this concern.  The record does not demonstrate that Stoneman received "no benefit" from the Annuity.

The fact that Defendants received more commissions on the Annuity than they would have on what Plaintiff considers a more "suitable investment" is insufficient to show that Defendants acted willfully or malevolently.  Indeed, Crandell testified that he did not consider the commissions he received from the Annuity to be a benefit and he did not receive any benefit from BAISI as a result of Stoneman's Annuity investment.  (Defendants' SOF 20, 38.)  It is notable that Plaintiff is the only customer to ever sue Crandell.  No other customers even lodged complaints against Crandell during his tenure at BAISI, including Stoneman.  Moreover, even if Stoneman can show that BAISI sold annuities because it desired additional commissions, that would not prove that BAISI intended to deceive Plaintiff.  A company's desire to increase profit does not prove fraudulent intent as to one person.  *See e.g., In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1085 (8th Cir. 2005).

Stoneman's decision to purchase the Annuity comports as well with honesty as it does with the fraudulent purpose alleged by Plaintiff, which Defendants deny.  As a matter of law, the better motive prevails and Defendants are entitled to summary judgment on Plaintiff's fraud claim.

### D.     Plaintiff's Claim for Punitive Damages Fails as a Matter of Law.

Stoneman has not shown facts from which a jury could reasonably infer that Defendants acted willfully, wantonly, maliciously, or recklessly.  Even if the Court were to conclude that Defendants deprived Stoneman of "a better investment opportunity," she has failed to identify any facts that show that Defendants knew there was a high degree of probability their conduct would result in injury to Stoneman.  Plaintiff claims that a jury could infer such intent because of the higher level of commission associated with the Annuity.  Again, this ignores Crandell's

express testimony that he did not consider the commissions from the Annuity to be a benefit. (Defendants' SOF 38.)  Also, any generalized desire on BAISI's part to earn additional commissions, which Defendants deny, is not sufficient to show that BAISI acted willfully, wantonly, maliciously, or recklessly.  There is no legal basis for Plaintiff's punitive damages claim on Counts I, II, and III of the Petition and, as such, they should be dismissed.

### E. Plaintiff Cannot Seek Damages Based On An Alternate Investment Scenario As a Matter of Law.

Plaintiff cites to *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 326 (5th Cir. 1981), and *Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1216, 1217 (8th Cir. 1990), to support her claim that she is entitled to the difference between the current value of her account and the value of her account had she invested in a bond fund in 2000.  These cases are inapplicable to the case at hand, as they both address churning claims.  In *Miley*, the Fifth Circuit held that "once a jury finds that the broker has churned an investor's account, it may also find that the investor would have paid less commissions and that his portfolio would have had a greater value had the broker not committed the churning violation."  *Miley*, 637 F.2d at 326. Similarly, in *Davis* the Eighth Circuit held that the plaintiff was entitled to damages in the amount of the "value that her account would have had if there had been no unauthorized trades or churning, less the amounts she actually received."  *Davis*, 906 F.2d at 1217.

The difference between the value of Stoneman's account when she surrendered the Annuity and the value of her account had she been invested in bond funds or bonds is not an appropriate measure of damages in this case.  Stoneman's account was not churned.  Moreover in *Davis*, the plaintiff did not seek damages based on investment in an entirely different vehicle; rather, she provided a measure of compensatory damages based on the churning of her account. *See Davis*, 906 F.2d at 1218.  In this case, Stoneman's theory of damages is based on a course of

action she would have taken in 2000 had she known then what she knows now. This is hardly a legally cognizable basis for damages. A "prudently managed account theory" is too speculative a basis on which to award damages. *See Madigan, Inc. v. Goodman*, 498 F.2d 233, 239 (7th Cir. 1974); *Rueter v. Merrill Lynch*, 440 F. Supp. 2d 1256, 1260 (N.D. Ala. 2006). The appropriate measure of damages in this case is the amount of Stoneman's out-of-pocket loss from the purchase of the Annuity, which is approximately $20,000.

## CONCLUSION

Plaintiff's Opposition to Defendants' Motion for Summary Judgment is nothing more than a last-ditch attempt to improve the performance of her investment through a lawsuit. Plaintiff is not entitled to the return of her initial investment plus a profit simply because she made an informed decision to purchase a common investment product that did not perform as well as she wanted. Such a request is akin to entering a casino, placing a bet, asking the casino to return all funds wagered and to pay for cab fare to leave. There is no genuine issue of material fact to preclude summary judgment for the Defendants against Stoneman.

BRYAN CAVE LLP

By: /s/ Seema Chawla
W. Perry Brandt   Mo. Bar No. 28292
Seema Chawla   Mo. Bar No. 54824
perry.brandt@bryancave.com
seema.chawla@bryancave.com
One Kansas City Place
1200 Main Street, Suite 3500
Kansas City, Missouri 64015
Telephone: (816) 374-3200
Facsimile: (816) 374-3300

**ATTORNEYS FOR DEFENDANTS
BANC OF AMERICA INVESTMENT
SERVICES, INC. AND RICK CRANDELL**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of February, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

>Reggie C. Giffin
>Reggie C. Giffin P.C.
>200 N.W. 47th Street
>Kansas City, Missouri 64116
>
>Attorneys for Plaintiff

    /s/ Seema Chawla
An Attorney for Defendants